**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| STACEY L. GORDIN, | : | Case No. 3:20-cv-352 |
| | : | |
| Plaintiff, | : | District Judge Michael J. Newman |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| vs. | : | |
| | : | |
| COMMSSIONER OF SOCIAL | : | |
| SECURTY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

---

## REPORT AND RECOMMENDATIONS[1]

---

     Plaintiff Stacey L. Gordin brings this case challenging the Social Security

Administration's denial of her application for a period of disability and Disability Insurance

Benefits.  The case is before the Court upon Plaintiff's Statement of Errors (Doc. #10), the

Commissioner's Memorandum in Opposition (Doc. #14), and the administrative record (Doc.

#9).

## I.    <u>Background</u>

     The Social Security Administration provides Disability Insurance Benefits to individuals

who are under a "disability," among other eligibility requirements.  *Bowen v. City of New York*,

476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1).  The term "disability" encompasses "any

medically determinable physical or mental impairment" that precludes an applicant from

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

performing "substantial gainful activity."  42 U.S.C. § 423(d)(1)(A); *see Bowen*, 476 U.S. at 469-70.

In the present case, Plaintiff applied for benefits on August 8, 2017, alleging disability due to leukemia, chemotherapy, lupus with fibromyalgia, neuropathy, multiple pulmonary nodules, mediastinal adenopathy, mental health issues, chronic pain syndrome, and back issues. After Plaintiff's application was denied initially and upon reconsideration, she requested and received a hearing before Administrative Law Judge (ALJ) Heidi Southern on July 29, 2019. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520.  She reached the following main conclusions:

Step 1:     Plaintiff has not engaged in substantial gainful activity since May 22, 2017, the alleged onset date.

Step 2:     Plaintiff has the following severe impairments: history of leukemia status/post chemotherapy, lupus, fibromyalgia, migraines, neuropathy, lumbar degenerative disc disease, asthma, depressive disorder, and anxiety disorder.

Step 3:     Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:     Her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consisted of "light work … with the following exceptions: No more than frequent balancing.  No more than occasional stooping, kneeling, crouching, crawling, or climbing of ramps and stairs.  No exposure to unprotected heights or moving mechanical parts.  No climbing of ladders, ropes, or scaffolds.  [Plaintiff] must avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, and atmospheric conditions.  [Plaintiff] is limited to performing simple, routine, and repetitive tasks. She is unable to perform at a production-rate pace (i.e. assembly line work), but can perform goal-oriented work (i.e.

2

office cleaner).  [Plaintiff] is limited to making simple, work-related decisions.  No more than occasional contact with supervisors, co-workers, and the general public.  Supervisory feedback should be given in a supportive manner.  No more than occasional changes in a routine work setting."

Plaintiff is unable to perform her past relevant work as a nurse aide/ health unit clerk, receptionist/medical assistant, insurance clerk, office clerk, or hospital-admitting clerk.

Step 5:  Plaintiff can perform a significant number of jobs that exists in the national economy such as a labeler, routing clerk, or tacking-machine tender.

(Doc. #9, *PageID* #s 55-59).  Based on these findings, the ALJ concluded that Plaintiff has not been under a benefits-qualifying disability since May 22, 2017.  *Id.* at 62.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #9, *PageID* #s 41-46), Plaintiff's Statement of Errors (Doc. #10), and the Commissioner's Memorandum in Opposition (Doc. #14).  To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II.    Standard of Review

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).  Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir.2007)).  It is "less than a preponderance but more than a scintilla."  *Id.*

3

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## III.   Discussion

Plaintiff contends that the ALJ failed to fully consider the testimony of the vocational expert when determining Plaintiff had the residual functional capacity to perform light exertion work. The Commissioner maintains that substantial evidence supports the ALJ's decision.

During the hearing, the ALJ posed several hypotheticals to the vocational expert to determine whether a hypothetical person with certain limitations could perform Plaintiff's past work and other work in the national economy. (Doc. #9, *PageID* #s 98-99). The vocational expert testified that the hypothetical individual could not perform Plaintiff's past work, but there are other jobs in the national economy that the hypothetical individual could perform. *Id.* at 99-100. Plaintiff's counsel then asked the vocational expert two questions: (1) how many absences would be work preclusive, and (2) how much time off task would be work preclusive. The vocational expert responded that more than eight absences during a calendar year would be work preclusive, and any off-task behavior that exceeds ten percent would be work preclusive. *Id.* at 102.

4

Plaintiff contends that the ALJ's failure to include the off-task and absence limitations in the RFC constitutes reversible error because she would have been found disabled had these limitations been included.  (Doc. #10, *PageID* #s 2280-81).  According to Plaintiff, "it is renowned that [Plaintiff's] conditions most definitely yield towards the additional issues raised by council [*sic*] pertaining to off-task behavior and additional absenteeism.  *Id.* at 2281.  In support, Plaintiff points to records concerning her diagnoses and symptoms of systemic lupus erythematosus, fibromyalgia, migraines, depression, and anxiety.  *Id.* at 2281-84.  Plaintiff's argument lacks merit.

"RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis …."  Soc. Sec. R. 96-8p, 1996 WL 374184, *2 (July 2, 1996).  The ALJ is responsible for assessing an individual's RFC.  20 C.F.R. §§ 404.1520(a)(4).  The ALJ's RFC assessment must be "based on all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements' -- i.e., opinions about what the individual can still do despite his or her impairment(s) -- submitted by an individual's treating source or other acceptable medical sources."  Soc. Sec. R. 96-8p, 1996 WL 374184, *2 (footnote omitted).  Importantly, hypothetical limitations posed to the vocational expert do not bind the ALJ to include those limitations in the RFC.  *Kessans v. Comm'r of Soc. Sec.*, 768 F. App'x 531, 536 (6th Cir. 2019) ("Indeed, the ALJ may pose a question involving a hypothetical individual with several limitations—and then later decide that those limitations differed from the claimant's limitations.  That does not mean that the vocational expert's answer about the *hypothetical individual* binds the ALJ.") (internal citation omitted); *see also Beckham v. Comm'r of Soc. Sec.*, No. 1:19-CV-576, 2020 WL 5035451, at *9 (S.D. Ohio Aug. 26, 2020) (Litkovitz, M.J.) ("Simply posing a hypothetical question to the [vocational expert]

does not result in a finding about a claimant's RFC or bind the ALJ where the medical record does not support the inclusion of such limitations."). "An administrative law judge is only required to include in the residual functional capacity those limitations he finds credible and supported by the record." *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 170 (6th Cir. 2020) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). The ALJ considered

Plaintiff does not point to an opinion from a medical source that specifically opined that she would be off task more than ten percent of the time or be absent more than eight times per year. Instead, Plaintiff asserts that the ALJ "should have given more controllable weight" to the opinion of her treating psychiatrist, Rao Vellanki, M.D. (Doc. #10, *PageID* #3384). Dr. Vellanki indicated on a mental status questionnaire that she had a poor ability maintain attention and sustain concentration, persist at tasks, and complete them in a timely fashion. (Doc. #9, *PageID* #s 829-30). The ALJ, however, was not persuaded by Dr. Vellanki's opinion because it was not consistent with his treatment notes—which consistently indicated that Plaintiff's ability to concentrate was "ok." *Id.* at 53, 59 (citations omitted). Further, the ALJ pointed out that Dr. Vellanki did not offer specific functional limitations. *Id.*

Instead, the ALJ was reasonably persuaded by the opinions of record-reviewing consultant, Kathleen Malloy, Ph.D. *Id.* at 58. Dr. Malloy found that Plaintiff had moderate limitations in her ability to concentrate, persist, or maintain pace; understand remember, or apply information; interact with others; and adapt or manage oneself. *Id.* at 182. Additionally, she opined that Plaintiff is capable of understanding, remembering, and performing "simple, 1-3 step tasks in an environment without strict time demands or high production quotas." *Id.* at 186-87. The ALJ found that Dr. Malloy's analysis of Plaintiff's abilities in the paragraph B areas of functioning was

"substantially consistent with the record as a whole, as well as with [Plaintiff's] subjective complaints …." *Id.* at 58. Furthermore, the ALJ was persuaded by the opinions of record-reviewing consultant, Jaime Lai, Psy.D., to they extent that her opinions were consistent with Dr. Malloy's. *Id.* at 59. Although Dr. Lai agreed with Dr. Malloy that Plaintiff has moderate limitations in her ability to concentrate, persist, or maintain pace and adapt or manage oneself, Dr. Lai found that Plaintiff had mild limitations in her ability to interact with others and no limitations in her ability to understand remember, or apply information. *Id.* at 161. The ALJ found that Dr. Malloy's opinions were more consistent with the record. *Id.* at 59.

Additionally, Plaintiff did not specifically testify that she would be off task more than ten percent of the time or be absent more than eight times a year. She testified that her mental impairments affect her ability to concentrate, she has short-term memory lapses, and she has some memory lapses from when she underwent chemotherapy. *Id.* at 92-93. But the ALJ recognized that Plaintiff has concentration deficits. *See id.* at 53, 57. Indeed, the ALJ concluded that Plaintiff had a moderate limitation in her ability to concentrate, persist, or maintain pace. *Id.* at 53. Accordingly, when the ALJ assessed Plaintiff's RFC, she included limitations to account for Plaintiff's concentration difficulties. Specifically, the ALJ found that Plaintiff could not climb ladders, ropes, or scaffolds and should not be exposed to unprotected heights or moving mechanical parts because "concentration deficits caused by pain could expose her to an unreasonable risk of harm when facing such conditions." *Id.* at 54, 57. Additionally, to account for her memory and concentration deficits, the ALJ found that Plaintiff was unable to perform at a production-rate pace and limited her to performing simple, routine, and repetitive tasks. *Id.* at 54, 57.

In sum, the ALJ reasonably evaluated the medical evidence related to Plaintiff's impairments and substantial evidence supports her RFC.  Plaintiff has not shown that the ALJ erred by failing to include additional off-task or absence limitations in the RFC.  For these reasons, Plaintiff's statement of errors is not well taken.

## IT IS THEREFORE RECOMMENDED THAT:

1.      The Commissioner's non-disability finding be affirmed; and

2.      The case be terminated on the Court's docket.


October 13, 2021                                     *s/Peter B. Silvain, Jr.*
                                                     Peter B. Silvain, Jr.
                                                     United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).